T.C. Memo. 1997-383

UNITED STATES TAX COURT

EVA J. MADIGAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20371-94.                    Filed August 21, 1997.

B. Gray Gibbs, for petitioner.

J. Scot Simpson, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WRIGHT, Judge:  Respondent determined a deficiency of

$20,238 in petitioner's Federal income tax for taxable year 1991.

Respondent further determined that petitioner is liable for

additions to tax under sections 6651(a)[1] and 6654 in the amounts

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect during the year at issue, and
                                        (continued...)

of $4,999 and $1,148, respectively.  After concessions, the sole issue for decision is whether respondent has connected certain bank deposits that petitioner made in 1991 to a likely source of income.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein.  Petitioner resided in St. Petersburg, Florida, at the time she filed the petition in this case.

Petitioner failed to file a Federal income tax return for taxable year 1991.  As a result, respondent prepared a substitute return for petitioner and subsequently issued a corresponding notice of deficiency on August 9, 1994.  Only one issue remains unresolved, and it involves bank deposits that respondent identified during an analysis of petitioner's bank accounts. Respondent raised this issue by asserting an increased deficiency based on unexplained bank deposits as discussed below.

While conducting the above-mentioned bank deposits analysis, respondent identified unexplained deposits totaling $30,212. Respondent subsequently concluded that most of these deposits were explained and reduced this amount to $2,808.35.  The deposits remaining at issue consist exclusively of checks and were made to an account entitled "Madigan and Company".  The

---

[1](...continued)
all Rule references are to the Tax Court Rules of Practice and Procedure.

following table lists the checks that constitute the disputed
deposits:

| DATE of CHECK | PAYEE of CHECK | MAKER of CHECK | AMOUNT of CHECK | NOTATIONS on CHECK |
|---|---|---|---|---|
| 1/21/91 | Eva Madigan | Nancy Burley | $ 50.00 | Payroll Bookkeeping 12/**/90[1] |
| 1/31/91 | Madigan & Company | Nancy Burley | 50.00 | --- |
| 4/15/91 | Madigan and Company | Nancy Burley | 50.00 | 1st Quarter Payroll tax Bookkeeping |
| 5/15/91 | Madigan & Company | Nancy Burley | 50.00 | April 91 Payroll Taxes |
| 6/24/91 | Madigan & Company | Nancy Burley | 50.00 | Payroll Tax Accounting |
| 7/13/91 | Madigan and Company | Nancy Burley | 50.00 | --- |
| 8/31/91 | Madigan & Company | Nancy Burley | 50.00 | Payroll bookkeeping |
| 9/16/91 | Madigan & Co. | Nancy Burley | 50.00 | Sept 91 Bookkeeping |
| 11/15/91 | Madigan & Co. | Nancy Burley | 50.00 | Bookkeeping |
| 12/6/91 | Madigan & Co. | Nancy Burley | 50.00 | Bookkeeping |
| 5/23/91 | Eva Madigan | Judith A. White | 425.00 | 1990 Tax Prep. |
| **/**/91 | Eva Madigan | Judith A. White | 225.00 | --- |
| 2/15/91 | Eva Madigan | Prudential-Bache | 858.35 | --- |
| 4/5/91 | Eva Madigan | Vickie Conant | 600.00 | --- |
| **/**/** | Eva J. Madigan | Ted Elcross | 200.00 | --- |
| | Total | | $2,808.35 | |

[1]Asterisks indicate illegible writing contained in the record.

OPINION

Section 61(a) defines gross income as "all income from whatever source derived".  Sec. 61(a)(1).  This definition includes all accessions to wealth that are clearly realized and over which a taxpayer has complete dominion.  Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).

The propriety of the bank deposits method of income reconstruction is well established.  Parks v. Commissioner, 94 T.C. 654, 658 (1990); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978); Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Harper v. Commissioner, 54 T.C. 1121, 1129 (1970).  In general, bank deposits are prima facie evidence of income, Marcello v. Commissioner, 380 F.2d 494, 496-497 & n.4 (5th Cir. 1967); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, supra, and the taxpayer must normally refute the Commissioner's determination that such deposits stem from unreported income.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, when the Commissioner has the burden of proof, bank deposits by themselves do not give rise to a "logical presumption" that they are income.  Armes v. Commissioner, 448 F.2d 972, 974 (5th Cir. 1971), affg. in part and remanding in part T.C. Memo. 1969-181.  Under this circumstance, the Commissioner may either connect the bank deposits to a likely source of income or, where the taxpayer

alleges a nontaxable source, negate each nontaxable source alleged by the taxpayer.  United States v. Massei, 355 U.S. 595 (1958); Holland v. United States, 348 U.S. 121, 137-138 (1954); Armes v. Commissioner, supra; Parks v. Commissioner, supra at 661.  If the Commissioner connects the bank deposits to a likely source of income, the finder of fact may properly conclude that such deposits are income.  Holland v. United States, supra; Armes v. Commissioner, supra.

Respondent has the burden of proof in the instant case because the issue before us pertains to an increased deficiency. Rule 142(a).  Moreover, because petitioner does not contend that the deposits at issue stem from a nontaxable source, respondent must connect the deposits to a likely source of income in order to satisfy the burden of proof.

Respondent maintains that a preponderance of the evidence indicates that the deposits at issue stem from a taxable source of income.  Specifically, it is respondent's contention that petitioner conducted a bookkeeping business during 1991, and that the deposits were made with checks that petitioner received in exchange for services that she performed in connection with that business.  As support for this argument, respondent explains that the checks at issue were deposited into petitioner's "business" bank account.  Respondent also explains that a majority of the checks at issue were made payable to petitioner's business and

contain notations that indicate that such checks constitute payment for services rendered.[2]

Petitioner's sole argument is that respondent has failed to carry the burden of proof.[3]

We agree with respondent but only with respect to the checks drawn by Nancy Burley (Ms. Burley) and Judith White (Ms. White). There is little doubt that the bank account involved in this case was a "business" account. However, establishing that petitioner deposited the checks at issue into a business account is not sufficient to satisfy respondent's burden, and it does not convince us that the deposits were likely made from a taxable source of income. But the size and frequency of the checks drawn by Ms. Burley indicate a regular source of cash which is consistent with the operation of a service-oriented business, such as a bookkeeping service. Moreover, nine of the checks drawn by Ms. Burley were made payable to "Madigan and Company," or a variation thereof, and not to petitioner personally. Additionally, eight of the checks drawn by Ms. Burley contain notations that suggest that such checks were issued as payment

---

[2]Respondent advances several other arguments in support of the contention that the deposits at issue represent taxable income to petitioner. However, because these arguments are significantly less persuasive than respondent's arguments with respect to the type of account involved, the payee, and the markings contained on the checks at issue, we decline to discuss them.

[3]Petitioner does not address the individual deposits at issue and does not contend that such deposits stem from a nontaxable source.

for services rendered. When we consider these three additional facts in conjunction with the fact that petitioner deposited the checks drawn by Ms. Burley into the above-mentioned business account, we have little trouble concluding that respondent has connected these checks to a likely source of taxable income. Petitioner failed to offer any evidence to the contrary.

We reach the same conclusion with respect to the two checks drawn by Ms. White. Although the evidence in the record regarding the checks drawn by Ms. Burley is more convincing than the evidence in the record regarding the checks drawn by Ms. White, the latter evidence is sufficiently persuasive, and we conclude that respondent has adequately linked the checks drawn by Ms. White to a likely source of taxable income. Petitioner failed to offer any evidence to the contrary.

We reach a different conclusion, however, with respect to the checks that petitioner received from Vickie Conant (Ms. Conant), Ted Elcross (Mr. Elcross), and Prudential-Bache. Each of these checks was made payable to petitioner personally and none contains markings that suggest that it was received in exchange for services rendered. All that is certain is that petitioner deposited these checks into her business bank account. As we noted above, however, this alone is not sufficient to persuade us that these deposits stem from a likely source of taxable income. The connection proffered by respondent is too tenuous.

Accordingly, we conclude that respondent has carried the burden of proof with respect to the checks issued by Ms. Burley and Ms. White, but that respondent has not similarly carried the burden of proof with respect to the checks that petitioner received from Ms. Conant, Mr. Elcross, and Prudential-Bache.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155.</u>